# IN THE SUPREME COURT OF THE STATE OF NEVADA

DAYCO FUNDING CORPORATION, A CALIFORNIA CORPORATION,
Appellant,
vs.
MICHAEL J. MONA, JR. AND RHONDA H. MONA, AS TRUSTEES OF THE MONA FAMILY TRUST; NORMAN FAMILY LIMITED PARTNERSHIP, A CALIFORNIA LIMITED PARTNERSHIP; A.O.E., LLC, A NEVADA LIMITED LIABILITY COMPANY; HAMID M. MAHBAN, AN INDIVIDUAL; MICHAEL J. MONA, JR., AN INDIVIDUAL; ISAAC NORMAN, AN INDIVIDUAL; AND ISAAC NORMAN AND HOMA NORMAN AS TRUSTEES OF THE NORMAN FAMILY TRUST DATED FEBRUARY 16, 1989, INDIVIDUALLY AND IN ITS CAPACITY AS GENERAL PARTNER OF THE NORMAN FAMILY LIMITED PARTNERSHIP,
Respondents.

No. 70833

FILED

OCT 02 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING

This is an appeal from a final judgment and award of attorney fees and costs in a real property action. Eighth Judicial District Court, Clark County; Elizabeth Goff Gonzalez, Judge.

Ali Moradshahi[1] and respondents The Mona Family Trust, Norman Family Limited Partnership, and A.O.E., LLC (collectively, Borrowers) jointly executed a note secured by a deed of trust, evidencing a loan Borrowers received from appellant Dayco Funding Corporation (Dayco) in the principal amount of $1,700,000. This loan was secured by a deed of trust on a parcel of undeveloped real property located in Clark County. Moradshahi and respondents Michael J. Mona, Jr., Isaac Norman, and Hamid M. Mahban signed the note and deed of trust on behalf of the respective Borrowers.[2]

Pursuant to the note, Borrowers were to make monthly payments towards the principal plus interest. A special rider also accompanied the note, which provided that Nevada law would apply. Similarly, the deed of trust also required that a copy of notice of default and notice of sale be mailed to Moradshahi's personal residence located at 1225 Comstock Place, Newbury Park, California 91320 (the Comstock address).

In addition to the deed of trust, a joint personal guaranty executed by the same individuals who signed the deed of trust (collectively, Guarantors) secured the loan. Unlike the special rider and deed of trust, the guaranty provided that California law would govern.

Several years after Borrowers and Guarantors (collectively, respondents) signed the loan documents, Borrowers ceased making payments on the loan. Dayco sent a demand letter to Guarantor Norman located at 904 South Wall Street, #210, Los Angeles, California 90015 (the

---

[1]Moradshahi is not a party on appeal.

[2]Rhona H. Mona also signed as a trustee for The Mona Family Trust, but is not an individual party on appeal.

Wall Street address), notifying him of Dayco's intention to proceed with foreclosure proceedings and enforce the personal guaranty.[3] Norman responded to Dayco's demand letter by requesting a meeting to discuss the matter. Norman's response letter indicated an address of 1436 South Street, Suite 200, Los Angeles, California 90015 (the Main Street address). Norman and Dayco exchanged emails to determine a meeting time, whereby Norman's emails indicated the Main Street address. Norman and Dayco met, but were unable to reach a solution regarding the loan.

Dayco then commenced nonjudicial foreclosure proceedings by employing Chicago Title Company to serve as trustee under the deed of trust. Dayco listed Borrowers as the present owners of the property, and listed the Comstock address as their last known mailing address. Accordingly, Chicago Title sent the notice of default for Borrower Norman Family Limited Partnership (NFLP) and Guarantor Norman only to the Comstock address. These notices were returned as undeliverable, but they were not resent to the other addresses Dayco had for NFLP and Norman.

Subsequently, Norman emailed Moradshahi's wife, Soheila, asking if Moradshahi had received any notice of a tax sale on the property. Soheila replied that she had found a notice of the sale for the property by Dayco and Chicago Title, but noted that it was not a tax sale and asked Norman if he needed the document. Norman responded by requesting that Soheila forward him the notice.

---

[3]The demand letter was sent by Eastern Mortgage Company (EMC). As Dayco's wholly-owned servicer, EMC subsequently assigned the guaranty to Dayco.

SUPREME COURT
OF
NEVADA

(O) 1947A

Chicago Title then mailed the notice of trustee's sale to the same addresses as before, and thus, NFLP's notice was only sent to the Comstock address and was consequently returned as unclaimed.

Dayco obtained the property at the trustee's sale for a $1,700,000 credit bid. Following the trustee's sale, a deficiency of about $800,000 remained. Dayco notified Norman of the deficiency amount respondents owed by sending a letter not only to the Comstock address, but also to the Main Street address.

Dayco filed a complaint in the district court alleging (1) breach of the note and deed of trust against Borrowers, (2) breach of the guaranty against Guarantors, and (3) application for deficiency judgment against respondents. Respondents asserted various affirmative defenses, including Dayco's failure to provide notice as required by NRS 107.080 and NRS 107.095.

Dayco moved for summary judgment. The district court granted Dayco's motion in part but denied it in part because a genuine issue of fact and law remained.[4] In particular, the district court found that a genuine issue remained as to whether service of the notice of default and the notice of sale were sufficient.

A bench trial followed to resolve the notice issues that remained. Ultimately, the district court concluded that Dayco failed to comply with the notice requirements of NRS 107.080(3), NRS 107.080(4)(a), and NRS 107.095 because Dayco did not send any foreclosure notices to Norman's last known address, namely the Wall Street address or the Main Street address. The district court also concluded that Dayco's failure to

---

[4]The district court also found that a second genuine issue remained; however, this issue is not relevant on appeal.

send notice to Norman's known address was fatal. Accordingly, the district court prohibited Dayco from recovering the deficiency judgment and awarded respondents statutory damages, as well as reasonable attorney fees and costs.

Dayco filed a motion to amend the district court's findings of fact and conclusions of law, which the district court denied. However, the district court granted respondents' motion for attorney fees and costs. Accordingly, the district court entered a judgment in favor of respondents for statutory damages, in addition to attorney fees and costs.[5] Dayco now appeals.

*Standard of review*

Whether a party was properly mailed notice is a question of fact. *Zugel v. Miller*, 99 Nev. 100, 101, 659 P.2d 296, 297 (1983). "We have repeatedly held that findings of fact and conclusions of law, supported by substantial evidence, will not be set aside unless clearly erroneous." *Sheehan & Sheehan v. Nelson Malley & Co.*, 121 Nev. 481, 486, 117 P.3d 219, 223 (2005) (internal quotation marks omitted). "Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion." *J.D. Constr. v. IBEX Int'l Grp., LLC*, 126 Nev. 366, 380, 240 P.3d 1033, 1043 (2010) (internal quotation marks omitted).

This court applies de novo review to questions concerning statutory interpretation. *Leven v. Frey*, 123 Nev. 399, 402, 168 P.3d 712, 714 (2007). Absent ambiguity, we apply the statute's plain meaning.

---

[5]The district court entered default judgment against Moradshahi. We disagree with Dayco's contention that this default judgment conclusively establishes that the district court rejected any common defense Moradshahi shared with respondents.

*Pankopf v. Peterson*, 124 Nev. 43, 46, 175 P.3d 910, 912 (2008). However, if a statute is ambiguous, this court will look to the Legislature's intent and any doubt as to its intent will be resolved "in favor of what is reasonable." *Id.* Moreover, "[w]henever possible, we will interpret a rule or statute in harmony with other rules or statutes." *In re CityCenter Constr. & Lien Master Litig.*, 129 Nev. 669, 677, 310 P.3d 574, 580 (2013) (internal quotation marks omitted).

> *The district court did not err in concluding that California law applied to the guaranty but did err in failing to make the appropriate findings*

Although the district court applied Nevada law to release Guarantors from liability, the district court concluded that California law applied to the guaranty, and the guaranty was valid and enforceable against Guarantors. Dayco argues that the district court erred in releasing Guarantors from liability because the district court should have applied California law to the guaranty instead of Nevada law. We conclude that because Nevada allows for choice of law provisions in guaranties, California law applied. However, because California law requires findings as to whether the guaranty was a sham, we remand.

"[T]his court [has] held that a choice of law provision contained in a guarantee should prevail despite a conflicting choice of law provision contained in the loan documents that were being guaranteed." *Pentax Corp. v. Boyd*, 111 Nev. 1296, 1299, 904 P.2d 1024, 1026 (1995). "We have also held that parties are permitted within broad limits to choose the law that

will determine the validity and effect of their contract." *Id.* (internal quotation marks omitted).[6]

Under California law, a guarantor does not have a right to the notice of default. *See* Cal. Civ. Code § 2924b. Further, "to collect a deficiency from a guarantor, he must be a true guarantor and not merely the principal debtor under a different name." *CADC/RAD Venture 2011-1 LLC v. Bradley*, 185 Cal. Rptr. 3d 684, 691 (Ct. App. 2015) (internal quotation marks omitted). Thus, "[w]hen the principal borrower takes on additional liability as a guarantor, that guaranty is a sham and adds nothing to the primary obligation." *Id.* Accordingly, "[a] guaranty is an unenforceable sham where the guarantor is the principal obligor on the debt." *Id.* at 693. "This is the case where either (1) the guarantor personally executes underlying loan agreements or a deed of trust, or (2) the guarantor is, in reality, the principal obligor under a different name by operation of trust or corporate law or some other applicable legal principle." *Id.* Here, the district court did not make findings as to whether the guaranty was a sham. Accordingly, remand is necessary for such a determination. If, on remand, the district court finds that the guaranty was a sham, the guaranty is unenforceable.

> *The district court did not err in finding that Dayco failed to send the notice of default and notice of trustee's sale to Borrower NFLP's last known address*

---

[6]Although respondents maintain that the guaranty's choice of law provision was unenforceable due to Nevada's public policy, we disagree. *See Pentax Corp.*, 111 Nev. at 1299, 904 P.2d at 1026 (stating that for a valid choice of law provision, two requirements must be met: "[t]he situs fixed by the agreement . . . must have a substantial relation with the transaction, and the agreement must not be contrary to the public policy of the forum" (internal quotation marks omitted)).

The district court found that Dayco knew of NFLP's and Norman's Main Street and Wall Street addresses, but only provided Chicago Title with the Comstock address. The district court further found that the notice of default and notice of trustee's sale was not sent to the current and last known address for NFLP, as required by NRS 107.080(3) and NRS 107.080(4).

Dayco argues that the district court erred in concluding that it failed to satisfy the notice requirements under NRS 107.080 because it was only required to send the notices to the Comstock address, and the Comstock address was NFLP's last known address.[7] Conversely, respondents argue that the court's findings of fact were not clearly erroneous because Dayco failed to provide evidence of actual error and substantial evidence supported the district court's findings. Respondents further argue that the district court did not commit legal error with respect to NRS 107.080.

NRS 107.080 sets forth the required notices for a trustee's sale. First, NRS 107.080(3) requires that a copy of the notice of default and election to sell be mailed "to the person who holds the title of record on the date the notice of default and election to sell is recorded . . . at their respective addresses, if known." Second, if the current title holder did not timely cure the deficiency and at least three months have passed since the notice of default was recorded, NRS 107.080(4)(a) further requires "[t]he trustee, or other person authorized to make the sale under the terms of the trust deed" to mail the notice of the scheduled trustee's sale "to each trustor"

---

[7]In addressing Dayco's additional argument, we conclude that the district court's conclusions of law concerning issues of due process were not clearly erroneous.

SUPREME COURT
OF
NEVADA

(O) 1947A

8

and "any other person entitled to notice pursuant to this section" to their "last known address."

In interpreting NRS 107.080(3) harmoniously with NRS 107.080(4)(a), we conclude that the pertinent notices must be sent to the current title holder's last known address, not just one known address as Dayco contends. Accordingly, the Comstock address was not NFLP's last known address. Although Borrowers initially requested in the deed of trust that the notices be sent to the Comstock address and they never changed the address by written notice, the subsequent correspondence between Dayco and NFLP indicated that the Wall Street and Main Street addresses were the last known addresses for this particular Borrower. *See, e.g., RTC Mortg. Trust 1994-N-2 v. Fry*, 730 A.2d 476, 479 (Pa. 1999) (where a forwarding address was provided by the postal service, the last known address was not the address of record and notice was required at the new address). Therefore, because a reasonable mind might accept this subsequent correspondence as adequate evidence to support a conclusion that the Wall Street and Main Street addresses were the last known addresses for NFLP, we conclude that substantial evidence supports the district court's findings of fact and conclusions of law, and thus, we will not set them aside. *See J.D. Constr. v. IBEX Int'l Grp., LLC*, 126 Nev. 366, 380, 240 P.3d 1033, 1043 (2010); *Sheehan & Sheehan v. Nelson Malley & Co.*, 121 Nev. 481, 486, 117 P.3d 219, 223 (2005).

> *The district court did not err in concluding that NFLP's notices did not substantially comply with the relevant statutes but it did err with respect to the remaining Borrowers*

The district court found that Dayco sent NFLP a letter to the Wall Street address advising Norman of the default and demanding that he cure the default. Additionally based on this letter, the district court found

that Norman and NFLP were aware of Dayco's intention to foreclose upon the property. The district court further found that Moradshahi did not provide Norman with a copy of the notice of the trustee's sale, despite his request. Thus, the district court concluded that because the notices were not sent to Borrowers' known address, the notices did not substantially comply with NRS 107.080 and NRS 107.095.

Dayco contends that even if the district court did not err by concluding that notices under NRS 107.080 and NRS 107.095 were insufficient, the district court abused its discretion by concluding that Dayco did not substantially comply with the relevant notice requirements because NFLP had actual notice and were not prejudiced. Conversely, respondents contend that Dayco did not substantially comply with the notice requirements.

Substantial compliance with NRS 107.080 and NRS 107.095 satisfies the statutes' notice requirements. *Schleining v. Cap One, Inc.*, 130 Nev. 323, 330, 326 P.3d 4, 8 (2014). "This court reviews substantial-compliance determinations for an abuse of discretion." *Id.* Substantial compliance is found when the title holder "had actual knowledge of the default and the pending foreclosure sale" and "was not prejudiced by the lack of statutory notice." *Id.* at 330, 326 P.3d at 9.

Here, NFLP had actual notice of the default, but it did not receive actual notice of the date and time of the trustee's sale. Because actual notice of default *and* trustee's sale were required under NRS 107.080, the lack of actual notice of the trustee's sale proves fatal and renders determination of prejudice unnecessary. Therefore, the district court did not abuse its discretion in finding that the notices did not substantially comply with NRS 107.080, despite the fact that the court did not make

specific findings as to actual notice and prejudice. *See Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010) ("This court will affirm a district court's order if the district court reached the correct result, even if for the wrong reason.").

However, as for the additional Borrowers, bad notice to one Borrower is not bad notice to all. If Dayco was not aware of alternative addresses for the remaining Borrowers, then notice at the address given in the deed of trust is sufficient. *See Estates in Eagle Ridge, LLLP v. Valley Bank & Trust*, 141 P.3d 838, 842 (2005) (holding that notice at the address listed in the deed of trust is sufficient where the party required to give notice is not aware of a new address, and was not informed of the new address by written notice as required by the deed of trust); *see also* Cal Civ. Code § 2942(b)(3) (defining "last known address" as an address "contained in the original deed of trust . . . or in any subsequent written notification of a change of physical address from the trustor . . . pursuant to the deed of trust"). Because there is a question as to which Borrowers received notice, and whether Dayco was aware of a different address for Borrowers, remand is appropriate.[8]

_____

[8]The dissent points out that the district court found that "the notices were not sent to the known address of the Borrowers and Grantors, [and thus] the notices did not substantially comply with the notice requirements of [NRS] 107.080 and 107.095." Dissenting order *post.* at 1. Based on this finding, the dissent concludes that Dayco failed to satisfy its burden of proving that the notices substantially complied with the relevant statutes. *Id.* However, the district court's findings were based on an incorrect standard of law. As described above, substantial compliance requires an analysis of whether there was actual notice and a lack of prejudice. *Schleining*, 130 Nev. at 330, 326 P.3d at 8. Because the record is silent as

SUPREME COURT
OF
NEVADA

(O) 1947A

*The district court did not err in releasing NFLP from liability but it did err in releasing the remaining Borrowers*

Because it is unclear upon which basis the district court released Borrowers from liability for the deficiency, Dayco argues that NRS 107.080 provided Borrowers with their sole remedies, which did not include release from liability for a foreclosure deficiency. Conversely, respondents argue that releasing Borrowers from liability is legally permissible and an opposite conclusion would lead to absurd results.[9]

NRS 107.080 does not explicitly release a borrower from its obligation to the beneficiary if the required notices are not properly given, unlike NRS 107.095's explicit releasement of a guarantor's liability for the same. Given this ambiguity and the Legislature's unclear intent as to whether a borrower may be released from liability, we interpret NRS 107.080 to be in harmony with NRS 107.095 and conclude that it is reasonable to release a borrower from liability if improper notices were given. *See In re CityCenter Constr. & Lien Master Litig.*, 129 Nev. 669, 677, 310 P.3d 574, 580 (2013); *Pankopf v. Peterson*, 124 Nev. 43, 46, 175 P.3d 910, 912 (2008). Accordingly, the district court had a legal basis for

---

to whether the Borrowers received actual notice or whether there was any prejudice, remand is appropriate.

[9]Respondents incorrectly argue that NRS 107.095(2) permits Borrowers' release from liability. Section 2 of NRS 107.095 only "releases the obligation to the beneficiary of any person who has complied with NRS 107.090" but was not properly given the notice of default as required by NRS 107.090. *See* NRS 107.090 (governing the requirements that follow once a person with an interest in the property requests a copy of the notice of default or sale in the office of the county recorder). Because none of the Borrowers requested a copy of the notice of default or sale in the office of the county recorder pursuant to NRS 109.090, NRS 107.095(2) did not release Borrowers from liability.

 

releasing NFLP from liability for the deficiency. However, as for the remaining Borrowers, we reiterate that remand is necessary because bad notice to one is not bad notice to all, and thus, the district court erred in releasing the remaining Borrowers.

*The district court did not err in concluding that Dayco was not entitled to conclusive proof*

The district court concluded that Dayco was not entitled to the conclusive proof afforded by NRS 107.030(8). Dayco argues that the court erred by not applying NRS 107.030(8). We disagree. Here, the district court's conclusion that Dayco was not entitled to conclusive proof was supported by substantial evidence because the record establishes confusion as to the proper notice. *See Sheehan & Sheehan v. Nelson Malley & Co.,* 121 Nev. 481, 486, 117 P.3d 219, 223 (2005); *J.D. Constr. v. IBEX Int'l Grp.,* 126 Nev. 366, 380, 240 P.3d 1033, 1043 (2010).

*The district court erred in awarding statutory damages, attorney fees, and costs to respondents*

"This court generally reviews a district court's decision awarding or denying costs or attorney fees for an abuse of discretion." *Gunderson v. D.R. Horton, Inc.,* 130 Nev. 67, 80, 319 P.3d 606, 615 (2014). "Where a trial court exercises its discretion in clear disregard of the guiding legal principles, it may constitute an abuse of discretion." *Id.* (internal quotation marks omitted). Accordingly, "the district court may not award attorney fees absent authority under a statute, rule, or contract." *Albios v. Horizon Cmtys., Inc.,* 122 Nev. 409, 417, 132 P.3d 1022, 1028 (2006).[10]

---

[10]We note that, "our plenary review is implicated when questions of law, such as in the interpretation of a contract, are at issue." *Davis v. Beling,* 128 Nev. 301, 321, 278 P.3d 501, 515 (2012). Therefore, in employing traditional rules of statutory and contract interpretation, "the initial focus is on whether the language of the contract is clear and

However, questions of law involving statutory interpretation are subject to this court's de novo review. *Id.*

With respect to damages, the district court concluded that respondents were entitled to damages for the defective foreclosure pursuant to NRS 107.080(7). Thus, the court concluded that respondents suffered damages in the amount of $5,000.00 in addition to attorney fees and costs incurred. The court subsequently entered its judgment in favor of respondents for $5,000.00 in statutory damages, $68,425.00 in attorney fees, and $3,940.98 in costs, for a total judgment of $77,425.98. However, the court never determined the validity of the trustee's sale.

Dayco argues that the district court erred by awarding respondents statutory damages, attorney fees, and costs pursuant to NRS 107.080(7) because the statute's plain language does not allow for such an award. Dayco further contends that even if the court did not err in awarding respondents damages, attorney fees, and costs, the court erred in not voiding the trustee's sale. Respondents argue that the district court's award of damages is not reviewable because Dayco first raised the issue in its post-trial motion to amend and the court elected not to entertain its motion on its merits. Respondents further argue that the court's award of attorney fees and costs is appropriate.

As an initial consideration, in reviewing an appeal from a final judgment, this court may consider arguments made for the first time on a

---

unambiguous; if it is, the contract will be enforced as written." *Id.* Here, awarding respondents attorney fees and costs were not authorized under contract because the deed of trust did not authorize Borrowers to recover attorney fees or costs. Rather, the deed of trust only stated that Borrowers agreed to pay or reimburse Dayco for attorney fees and costs incurred in an action related to the deed of trust.

SUPREME COURT
OF
NEVADA

(O) 1947A

14

motion for reconsideration "if the reconsideration order and motion are properly part of the record on appeal from the final judgment, and if the district court elected to entertain the motion on its merits." *Arnold v. Kip*, 123 Nev. 410, 417, 168 P.3d 1050, 1054 (2007). Here, because the district court's order denying Dayco's motion to amend and Dayco's motion to amend are part of the record on appeal from the final judgment, and the district court elected to entertain the merits on Dayco's motion to amend before denying the motion, this court may consider Dayco's arguments concerning damages.

Accordingly, NRS 107.080 provides in relevant part:

> 5. . . . [A] sale made pursuant to this section must be declared void by any court of competent jurisdiction in the county where the sale took place if:

> (a) The trustee or other person authorized to make the sale does not substantially comply with the provisions of this section;

> (b) . . . [A]n action is commenced in the county where the sale took place within 30 days after the date on which the trustee's deed upon sale is recorded . . . ; and

> (c) A notice of lis pendens providing notice of the pendency of the action is recorded . . . within 5 days after commencement of the action.

> 6. If proper notice is not provided pursuant to [NRS 107.080(3)] or [NRS 107.080(4)(a)] to the grantor, to the person who holds the title of record on the date the notice of default and election to sell is recorded, to each trustor or to any other person entitled to such notice, the person who did not receive such proper notice may commence an action pursuant to subsection 5 within 90 days after the date of the sale.

7. If, in an action brought by the grantor or the person who holds title of record in the district court in and for the county in which the real property is located, the court finds that the beneficiary, the successor in interest of the beneficiary or the trustee did not comply with [NRS 107.080(3) or NRS 107.080(4)(a)], the court must award *to the grantor or the person who holds title of record*:

(a) Damages of $5,000 or treble the amount of actual damages, whichever is greater;

(b) An injunction enjoining the exercise of the power of sale . . . ; and

(c) Reasonable attorney's fees and costs,

unless the court finds good cause for a different award. The remedy provided in this subsection is in addition to the remedy provided in subsection 5.

(Emphasis added).[11] Thus, any action under this statute would need to commence within either (1) "30 days after the date on which the trustee's deed upon sale is recorded," or (2) "90 days after the date of the sale." *See* NRS 107.080(5)-(6).

Here, the complaint was filed on June 6, 2014, more than 90 days after the trustee's deed upon sale was recorded on December 16, 2013 in the Clark County Recorder's Office. Respondents filed its answer on September 22, 2014, following various motions, and only asserted affirmative defenses. Consequently, because timely action after the

---

[11]NRS 107.080 was amended effective June 1, 2015. 2015 Nev. Stat., ch. 316, § 4, at 1609. As part of those amendments, what was previously subsection 7 became subsection 8. *Id.* at 1617-18. This order addresses the version of NRS 107.080 in effect at the time that the underlying cause of action arose.

SUPREME COURT
OF
NEVADA

(O) 1947A

trustee's sale was not taken, there was no basis for the district court to void the sale or to award any party statutory damages, attorney fees, and costs under NRS 107.080.[12] Therefore, the district court erred in awarding statutory damages, attorney fees, and costs pursuant to NRS 107.080. *See Albios v. Horizon Cmtys., Inc.*, 122 Nev. at 417, 132 P.3d at 1028. Based on the foregoing, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Douglas

_____, J.
Pickering

cc:   Hon. Elizabeth Goff Gonzalez, Chief Judge
      Ara H. Shirinian, Settlement Judge
      Kolesar & Leatham, Chtd.
      Marquis Aurbach Coffing
      Eighth District Court Clerk

---

[12]The dissent concludes that the district court must award certain damages "if the district court finds that the beneficiary or trustee did not comply with NRS 107.080." Dissenting order *post.* at 2. However, the statute requires that the grantor or titleholder bring an action that complies with the timing requirements set forth in NRS 107.080(5)-(6), which was not done here. In addition, the statute says that damages are to be awarded *"to the grantor or the person who holds title of record."* NRS 107.080(7). As the district court concluded that Dayco is the titleholder, the statute would presumably only allow for Dayco to seek damages.

GIBBONS, J., dissenting:

While I agree with the majority that the district court did not err in concluding that notice to NFLP did not substantially comply with NRS 107.080 and 107.095, nor did it err in releasing NFLP from liability, I would affirm the district court's decisions with respect to the remaining Borrowers. As a result, the decision to award statutory damages, attorney fees, and costs to respondents was not an error and I would affirm the district court's decision in its entirety.

This court does not set aside a district court's findings of fact and conclusions of law unless they are not supported by substantial evidence or are clearly erroneous. *Sheehan & Sheehan v. Nelson Malley & Co.*, 121 Nev. 481, 486, 117 P.3d 219, 223 (2005). Here, Dayco bore the burden of proving at trial that the notices substantially complied with the relevant statutes. *See Zugel v. Miller*, 99 Nev. 100, 101, 659 P.2d 296, 297, nt.1 (1983) (stating that the party who can personally serve notice or use registered or certified mail has the burden of proof as to notice). By concluding, "[a]s the notices were not sent to the known address of the Borrowers and Guarantors, the notices did not substantially comply with the notice requirements of [NRS] 107.080 and 107.095," the district court held that Dayco failed to satisfy its burden. While the majority asserts that the district courts findings are only relevant as to NFLP, the very language of the district courts order references all "the Borrowers," not merely NFLP.[1] Thus, the appropriate action here is to affirm, not remand, because there is no question that Dayco failed to send notice to the Borrowers.

---

[1]As the majority notes, lack of notice "proves fatal and renders determination of prejudice unnecessary." Majority at 10-11. I conclude that

Moreover, both the deed of trust and personal guaranty required that the notices be sent to all the Borrowers at the Comstock address, not just to NFLP. However, Dayco became aware of the Borrowers' new address and failed to send notice there. Thus, delivery of the notices to the Comstock address, not to the Borrowers' last known address, did not substantially comply with the notice requirements set forth in the deed and personal guaranty because Dayco failed to provide any evidence that it gave actual notice to anyone. Accordingly, the district court's finding is not clearly erroneous because it is substantially supported by the record.

The majority further concludes that the district court "erroneously took it upon itself to issue the award [of statutory damages, attorney fees, and costs under NRS 107.080] in respondents' favor" and, thus, the award was in error. However, NRS 107.080 provides that if the district court finds that the beneficiary or trustee did not comply with NRS 107.080, the court must award: "(a) Damages of $5,000 or treble the amount of actual damages, whichever is greater; (b) An injunction enjoining the exercise of the power of sale . . . ; and (c) Reasonable attorney's fees and costs."[2] Thus, because Dayco failed to comply with NRS 107.080, the district court did not abuse its discretion in awarding such fees and costs under the

_____

this analysis holds true for the remaining Borrowers as Dayco failed to establish below that it provided notice to any of the Borrowers, not only NFLP.

[2]The majority asserts that when read together, NRS 107.080(5)-(6) preclude damages under NRS 107.080(7). *See* majority order at 14-16. However, the plain language of the statute does not create such a rule and thus, the statute allows for damages, attorney fees, and costs in a manner consistent with the district court's ruling.

plain language of the statute. *See Gunderson v. D.R. Horton, Inc.*, 130 Nev. 67, 80, 319 P.3d 606, 615 (2014).

Accordingly, having determined that remand is inappropriate because no issues of fact remain, and that the award of damages, attorney fees, and costs was appropriate, I would affirm the decision of the district court in its entirety.

_____, J.
Gibbons